## INTEGRITY MUTUAL INSURANCE COMPANY v. STATE AUTOMOBILE & CASUALTY UNDERWRITERS INSURANCE COMPANY.

239 N. W. 2d 445.

February 6, 1976—No. 45780.

---

*Whitfield, Musgrave, Selvy, Kelly & Eddy, Roy W. Meadows, Robert L. Fanter,* and *Robert Hoppe,* for appellant.

*Barnett, Ratelle, Hennessy, Vander Vort, Stasel & Herzog* and *W. Scott Herzog,* for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

This litigation between two insurance companies presents again the vexing question of how to apportion liability between two insurers of the same risk when the policies of insurance contain conflicting "other insurance" clauses. Insurance companies commonly include in their policies other insurance clauses which tend to limit their liability on the risk if the insured has similar insurance available from another company. Some companies use a pro rata clause, limiting the insurer's liability to that fraction of the loss which the insurer's limit of liability is of all applicable limits of liability of all insurers. Other companies use an excess clause, limiting liability to the amount by which the loss exceeds the limit of liability of all other insurers. Still other companies have been known to include an escape clause, a provision that if the insured has available any other insurance whatsoever, then the insurer will not be liable on the risk at all.

Often two or more companies would be fully liable for a loss but for their respective other insurance clauses, and many times those clauses conflict in their provisions. When it is clear that two or more companies are among themselves liable to the in-

sured for his loss but the apportionment among the companies cannot be made without violating the other insurance clause of at least one company, then the courts must look outside the policies for rules of apportionment. One approach, known as the Lamb-Weston doctrine, is to require, when "other insurance" clauses conflict, that the loss be prorated among the insurers on the basis of their respective limits of liability. Lamb-Weston, Inc. v. Oregon Auto. Ins. Co. 219 Ore. 110, 341 P. 2d 110 (1959).

The approach of the Minnesota court has traditionally been more complex than the Lamb-Weston doctrine. In Federal Ins. Co. v. Prestemon, 278 Minn. 218, 231, 153 N. W. 2d 429, 437 (1967), we stated that the better approach is to allocate respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy. The Minnesota courts examine the policies and determine whether the insurers are concurrently liable on the risk, or one is primarily liable and another only secondarily liable. If they are concurrently liable, each must pay a pro rata share of the entire loss. Woodrich Const. Co. v. Indemnity Ins. Co. of North America, 252 Minn. 86, 89 N. W. 2d 412 (1958); Commercial Cas. Ins. Co. v. Hartford Accident & Ind. Co. 190 Minn. 528, 252 N. W. 434, 253 N. W. 888 (1934). On the other hand, if one insurer is primarly liable and the other only secondarily, the primary insurer must pay up to its limit of liability, and then the secondary insurer must pay for any excess up to its own limit of liability. Eicher v. Universal Underwriters, 250 Minn. 7, 83 N. W. 2d 895 (1957). In addition, some coverages may be neither primary nor secondary, but tertiary in their application.

The nub of the Minnesota doctrine is that coverages of a given risk shall be "stacked" for payment in the order of their closeness to the risk. That is, the insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the

most incidental to the basic purpose of its insuring intent will be liable last. If two coverages contemplate the risk equally, then the two companies providing those coverages will prorate the liability between themselves on the basis of their respective limits of liability.

We turn to an application of these principles to the specific situation presented in this case. Integrity Mutual Insurance Company (Integrity) insured Kenneth Rechtzigel, who owned three automobiles. We label these A, B, and C, for ease of reference. The Integrity policy covered Kenneth for bodily injury caused by uninsured motorists, and it provided three separate coverages of $50,000 per person and three separately specified premium amounts with respect to his three automobiles. The Integrity policy also covered bodily injury losses Kenneth might sustain from uninsured motorists while he was driving the automobile of another person.

State Automobile & Casualty Underwriters Insurance Company (State Auto) insured Anton Rechtzigel (Kenneth's father), who owned two automobiles. These may be labeled 1 and 2. The State Auto policy covered Anton's relatives and any other person while occupying an insured automobile who suffered bodily injury because of uninsured motorists. Kenneth was both a relative and an occupant of an insured automobile under the State Auto policy. While driving Anton's automobile 1, Kenneth was fatally injured in a collision with an uninsured motorist's automobile. Pursuant to arbitration, damages for his death were determined to be $172,082.47.

The policies of Integrity and State Auto both contained other insurance clauses. Integrity used an "excess clause"; [1] State Auto

[1] "With respect to bodily injury to an insured while occupying an automobile not owned by the named insured the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this Part exceeds the sum of the applicable limits of liability of all such other insurance.

"With respect to bodily injury to an insured while occupying or

used a conflicting "pro rata" clause.[2] The parties have premised in their arguments that if Integrity were the only insurer involved it would pay Kenneth's estate $150,000 (i. e., $50,000 per automobile times three automobiles), and if State Auto were the only insurer involved it would pay $100,000 (i. e., $50,000 per automobile times two automobiles).[3]

---

through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this Part for a greater proportion of the applicable limit of liability of this Part than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.

"Subject to the foregoing paragraphs, if the insured has other similar insurance available to him against a loss covered by this Part, the company shall not be liable under the Part for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss."

[2] "With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

[3] See, Nygaard v. State Farm Mutual Auto. Ins. Co. 301 Minn. 10, 221 N. W. 2d 151 (1974); Van Tassel v. Horace Mann Mutual Ins. Co. 296 Minn. 181, 207 N. W. 2d 348 (1973); Northland Ins. Co. v. West, 294 Minn. 368, 201 N. W. 2d 133 (1972). These premises and our disposition in this case recognize the principle that uninsured motorist protection is not

The question presented for our decision is in what order the separate coverages should be stacked for payment. Difficult as it may be, this requires an analysis of each coverage to determine how close each is to the risk involved.

Pleitgen v. Farmers Ins. Exchange, 296 Minn. 191, 207 N. W. 2d 535 (1973), presented the fact situation most similar to this case. There the plaintiff was a passenger in an automobile owned and operated by one Robert Taylor when she was injured by an uninsured motorist. The insurer of the Taylor automobile paid up to its policy limits, but the plaintiff still had some $12,000 of uncompensated injuries. She sued her own insurance company, which covered her for $10,000 of uninsured motorist injuries but provided for an offset of any sums paid her under medical expense coverage. We held that her insurer could not offset such payments, stating that "plaintiff is entitled to recover to the full extent of the coverage under the policy insuring the Taylor automobile and, in addition, under the policy issued to plaintiff, to the full extent of her damages plus her medical expenses." 296 Minn. 195, 207 N. W. 2d 538. Pleitgen is not decisive, however, because the order of stacking was not directly at issue in that case. Both insurers had to pay to their full policy limits, and thus the order of payment was irrelevant.

We hold that the first $50,000 of Kenneth's damages is to be paid by State Auto because of its coverage with respect to automobile 1. The remaining damages, up to a limit of an additional $150,000, are to be prorated among the coverages provided with respect to automobiles A, B, and C, all of which were provided

---

coverage for vehicles but for persons. This case represents an extension of that principle. After it is determined that several coverages are applicable to one injured person, the further determination must be made in what order these coverages should be stacked for payment of the claim. This case involves the latter kind of determination.

The parties appear to agree that Kenneth enjoyed the coverage provided with respect to automobile 2. We assume they so agree because Kenneth was a relative and not simply because Kenneth was an occupant of automobile 1.

by Integrity. Integrity, then, is liable for the payment of the remaining $122,082.47.

We so hold because the coverage with respect to automobile 1 is closest to the risk. The State Auto policy specifically provides that among those insured against uninsured motorists are Anton's relatives. Thus the coverage provided with respect to automobile 1 specifically contemplates injuries to Kenneth while riding in automobile 1 and, importantly for this case, it does so more directly than do any of the other four coverages.

Next closest to the risk are the coverages in respect to automobiles A, B, and C. Each of these three coverages, as an incidental purpose, provided protection of Kenneth while driving some other automobile. The specific risk in this case was that Kenneth would be injured while driving automobile 1. These three coverages did not contemplate the risk as directly as did the coverage provided with respect to automobile 1 itself. But they did contemplate this risk more directly than did the coverage with respect to automobile 2. Because the coverages with respect to A, B, and C are all equally close to the risk, they are concurrent with one another. Thus after the first $50,000 of Kenneth's damages has been allocated to coverage 1, the remainder of the damages will be prorated among A, B, and C.

The coverage which most incidentally covered the risk was the coverage provided with respect to automobile 2. It did provide protection for Kenneth while driving automobile 1, but this risk was contemplated less directly by the coverage with respect to automobile 2 than it was by any of the other four coverages.

The judgment of the district court, which resulted in a stacking order of 1-2, A-B-C, is reversed and the case remanded with instructions to enter judgment in accordance with this opinion.

Reversed and remanded with instructions.