**GAMBLE SKOGMO, INC., Respondent,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Appellant.**

No. C5–86–380.

Court of Appeals of Minnesota.

July 8, 1986.

Gordon H. Hansmeier, Donohue, Rajkowski, Hansmeier, Grunke & Jovanovich, Ltd., St. Cloud, for respondent.

Robert T. White, Susan D. Hall, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for appellant.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

Respondent Gamble Skogmo, Inc. (Gamble) brought a declaratory judgment action

against appellant Aetna Casualty and Surety Company (Aetna) seeking a declaration that Aetna was obligated to defend it in a personal injury action. The trial court concluded Aetna had a duty to defend Gamble and awarded Gamble its costs and attorney fees in the underlying action ($37,742.26). Aetna appeals. We affirm.

## FACTS

The case was submitted on stipulated facts. On July 23, 1980, a gas water heater exploded at Josephine Pirkl's home in Foley, Minnesota. Michael Balder was injured as a result of the explosion. This declaratory judgment action resulted from a personal injury action brought by Michael and Zita Balder against Gamble and several other defendants (the Balder action).

The involved water heater was manufactured by Jim Walter Corporation (Walter) in 1970. The heater incorporated a Honeywell valve. Gamble, an appliance wholesaler, purchased the water heater from Walter in the regular course of Gamble's business. The water heater was then purchased in the regular course of business by John Svihel, d/b/a Gamble Skogmo Store, an independent business in Foley. The water heater was installed by an independent repairman.

Between the date of installation and the date of the explosion, Pirkl experienced difficulties with the water heater. Most of the problems were related to a leaky knob. Once, Ms. Pirkl took the knob to Jim Svihel at the Gamble store in Foley and told him about the problems with the knob. He told her to write to Honeywell, which she did. (She had earlier testified at her deposition that she had written a letter and received a letter back from Gamble in March 1976.)

Republic Heater Company (Republic) is the successor in interest to Walter. As such, Gamble tendered the defense of the personal injury claim to Republic at the beginning of the lawsuit. Republic initially accepted the tender, but after 35 days it returned the tender with a statement that it could not accept the defense.

Walter had a vendors endorsement policy with Aetna when the water heater was manufactured. The endorsement included a vendor as an insured, but only with respect to the distribution or sale of the named insured's products in the regular course of the vendor's business. The endorsement specifically excluded servicing or repair operations (other than those performed at the vendor's place of business in connection with the sale of the product). The parties have stipulated that Gamble was a vendor within the meaning of the policy.

The "other insurance" clause of the Aetna policy provides:

**6. Other insurance**

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the **insured** has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the **company's** liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, the **company** shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the **company** shall not be liable under this policy for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insur-

er has been paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the **company** shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Gamble had an insurance policy with Travelers Insurance Company (Travelers). The "other insurance" clause in the Travelers policy provides:

10. **Other insurance.** If the insured has other insurance against a loss covered by this policy, the company shall not be liable to the insured hereunder for a greater proportion of such loss than the amount which would have been payable under this policy, had no such other insurance existed, bears to the sum of said amount and the amounts which would have been payable under each other policy applicable to such loss, had each such policy been the only policy so applicable.

At the close of the plaintiffs' case, the trial court granted Gamble's motion for a directed verdict and dismissed Gamble from the Balder action with prejudice. No independent tort by Gamble was established.

### ISSUES

1. Is the trial court's conclusion that Aetna was obligated to defend Gamble in the personal injury action supported by the stipulated facts?

2. Did the trial court err in finding Aetna primarily liable and awarding Gamble's defense costs?

3. Is Travelers entitled to an award of attorney fees incurred pursuing the declaratory judgment action?

### ANALYSIS

1. *The duty to defend*

■ An insurer's obligation to defend is contractual in nature and is determined by examining the complaint and the policy coverage. *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389, 390 (Minn.1979). In order for the duty to defend to arise, the suit must be based on a claim covered by the policy. *Bobich v. Oja*, 258 Minn. 287, 293, 104 N.W.2d 19, 24 (1960) (citations omitted). The insurer must defend if a part of the cause of action is arguably within the scope of coverage. *Prahm*, 277 N.W.2d at 390. The obligation to defend arises if the claim is not clearly outside coverage. *Id.* (citing *Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 240 N.W.2d 310 (1976)).

■ The complaint in the Balder action included claims of strict liability, breach of warranty, and negligence. The negligence alleged was negligent distribution of the water heater to the local Gamble store. The Aetna vendors endorsement covers vendors engaged in distribution and sale of the named insured's products, but excludes coverage for servicing or repair operations. Thus, the claims fall within the policy coverage because they are related to sale or distribution of the named insured's products.

It is appellant's position that the correspondence between Gamble and Ms. Pirkl constitutes "servicing or repair" and coverage is therefore excluded. Appellant argues that the Balders alleged an independent tort by Gamble, i.e., that the response to Ms. Pirkl's letter was negligent, and therefore no duty to defend arose. Appellant concedes, however, that if the personal injury claim was based on the theory that Gamble was a mere conduit of the hot water heater, a duty to defend would have arisen.

The cases cited by appellant are not controlling here. In *Bobich*, 258 Minn. 287, 104 N.W.2d 19, the president and major shareholder of a corporation was joined personally in an action to recover for injuries resulting from an accident involving a company car. The corporation's insurer refused to defend claiming there was no coverage for vehicles owned by the president.

The court held there was no duty to defend because the policy excluded the president's personal vehicles, and if the vehicle was owned by the corporation, the workers compensation exclusion eliminated coverage. Thus, under neither circumstance could the insurer be liable to the insured.

Similarly, in *Lang v. General Insurance Co. of America*, 268 Minn. 36, 127 N.W.2d 541 (1964), the policy clearly excluded coverage. *Lang* involved a motor scooter accident. After finding that the scooter was an automobile within the meaning of the homeowner's policy, the court held there was no duty to defend because the policy excluded coverage for injuries involving automobiles away from the premises. *See also Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 240 N.W.2d 310 (1976) (no "occurrence" within meaning of policy, therefore no coverage and no duty to defend).

A duty to defend was found to exist where the complaint alleged alternative claims, one within and one outside the policy coverage, in *Grain Dealers Mutual Insurance Co. v. Cady*, 318 N.W.2d 247 (Minn.1982). The underlying action in *Grain Dealers* involved allegations that the insured was engaged in either a joint venture or a joint enterprise. Joint ventures were expressly excluded by the policy, but joint enterprises were not. The court held that because there was an allegation of coverage (joint enterprise) there was a duty to defend. *Id.* at 251.

Likewise, the insurer was obligated to defend in *Brown v. State Automobile & Casualty Underwriters*, 293 N.W.2d 822 (Minn.1980). The underlying action in *Brown* involved a suit against the insured for personal injuries. The complaint could be read to state a cause of action in negligence and also a claim based on a theory of assault and battery. A negligence claim was clearly within the terms of the policy coverage, but the assault and battery claim was arguably excluded. The supreme court held that summary judgment was properly entered for the insured on the question of the insurer's duty to defend. *Id.* at 826.

The strict liability claim against Gamble was dismissed pursuant to Minn.Stat. § 544.41 (1984). The warranty claim, however, remained and was clearly within the endorsement coverage. No independent tort was established at trial. As the court noted:

> The allegation of an independent tort may have made it appear reasonable for Defendant to refuse to defend Plaintiff. Certainly it gave Defendant the option of defending or refusing to defend. By choosing not to defend, however, Defendant assumed the risk of an eventual determination that it should have defended Plaintiff.

There was a claim alleged here that clearly came within the terms of the policy coverage. The claim that was outside the policy terms was never established. Appellant was obligated to defend Gamble in the Balder action because the Balder action was based on a claim covered by the policy. The purported independent tort did not relieve Aetna of its obligation.

### 2. *Priority of coverage*

■ The trial court did not address the question of primary liability. However, by holding Aetna liable for the entire amount of costs and attorney fees, it impliedly found Aetna primarily liable.

A general discussion of "other insurance" clauses is cogently set forth in *Integrity Mutual Insurance Co. v. State Automobile & Casualty Underwriters Insurance Co.*, 307 Minn. 173, 239 N.W.2d 445 (1976):

> Insurance companies commonly include in their policies other insurance clauses which tend to limit their liability on the risk if the insured has similar insurance available from another company. Some companies use a pro rata clause, limiting the insurer's liability to that fraction of the loss which the insurer's limit of liability is of all applicable limits of liability of all insurers. Other companies use an excess clause, limiting liability to the

amount by which the loss exceeds the limit of liability of all other insurers. Still other companies have been known to include an escape clause, a provision that if the insured has available any other insurance whatsoever, then the insurer will not be ·liable on the risk at all.

Often two or more companies would be fully liable for a loss but for their respective other insurance clauses, and many times those clauses conflict in their provisions. When it is clear that two or more companies are among themselves liable to the insured for his loss but the apportionment among the companies cannot be made without violating the other insurance clause of at least one company, then the courts must look outside the policies for rules of apportionment.

*Id.* at 174–75, 239 N.W.2d at 446.

Given resolution of the first issue in Gamble's favor, there can be no dispute that both the Aetna and Travelers policies apply here. Thus, the first question is whether the "other insurance" clauses can be read in harmony.

The Aetna clause first states that it is primary unless stated to be otherwise. There is nothing in the policy stating that coverage is excess or contingent. Thus, the coverage is primary. The clause goes on to say that when Aetna is primary and the insured has other insurance on an excess or contingent basis, Aetna's liability is not reduced. This provision is not applicable here either because the Travelers policy is not excess or contingent.

When both the Aetna policy and other insurance apply on the same basis (in this case primary coverage) Aetna will not be liable for a greater proportion of the loss than stated in the contribution provisions. The contribution provisions provide for either contribution by equal shares or contribution by limits. Thus, the Aetna other insurance clause is a pro rata clause, i.e., it provides for a proportionate share of liability.

The contribution by equal shares paragraph states that it applies only if the other available insurance has a provision for con-tribution by equal shares. The Travelers clause is a pro rata clause based on the total amount of collectible insurance under all applicable policies. Thus, the contribution by equal shares provision does not apply.

The other option under the Aetna policy is contribution by limits. Under this provision, Aetna is not liable for a greater proportion of the loss than the Aetna limit of liability bears to the sum of the limits of liability of all collectible policies applicable to the loss. Thus, the measure of liability under this clause is also different from the Travelers clause, i.e., the Aetna clause is based upon total limits of liability while the Travelers clause is based on total amounts payable under all policies for a particular loss.

Therefore, these policies present conflicting pro rata clauses. They cannot be read together harmoniously and neither can be applied without violating the other. Consequently, the rule of *Integrity Mutual* and its progeny must be applied.

The approach used by Minnesota courts is to examine the policies to determine whether the insurers are concurrently liable or whether one is primarily liable and another secondarily liable. *Integrity Mutual*, 307 Minn. at 175, 239 N.W.2d at 446–47. The court must allocate the coverage:

in light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy.

*Id.* at 175, 239 N.W.2d at 446.

The insurers are liable to the insured in the order of their closeness to the risk:

That is, the insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the most incidental to the basic purpose of its insuring intent will be liable last. If two coverages contemplate the risk equally, then the two companies providing those coverages will pro rate the liability between themselves

on the basis of their respective limits of liability.

*Id.* at 175–76, 239 N.W.2d at 447.

The Minnesota Supreme Court has set forth the factors to be considered in determining closeness to the risk as follows:

(1) Which policy specifically described the accident-causing instrumentality?

(2) Which premium is reflective of the greater contemplated exposure?

(3) Does one policy contemplate the risk and use of the accident-causing instrumentality with greater specificity than the other policy—that is, is coverage of the risk primary in one policy and incidental to the other?

*Auto Owners Insurance Co. v. Northstar Mutual Insurance Co.*, 281 N.W.2d 700, 704 (Minn.1979).

Neither of the policies in this case specifically describes the water heater. Both are comprehensive general liability policies. The Aetna vendors endorsement does, however, specifically provide coverage for distribution or sale of the named insured's products.

The premium payable under each of the policies reflects a number of different factors. For example, the policies have different limits of liability and different endorsements. The general premium payable under the Travelers policy includes an amount for general liability coverage. On the other hand, the Aetna general liability premium does not cover vendor liability. A separate premium was paid for the special endorsement.

Finally, although both policies contemplated this risk, it was included under the Travelers policy only generally. In contrast, the Aetna policy includes a separate endorsement to cover this specific risk. Therefore, the Aetna policy contemplates the risk with greater specificity.

An examination of the factors set forth in *Auto Owners* leads us to conclude that Aetna is primarily liable on the risk. Therefore, the trial court's award of the full $37,742.26 to Gamble was not error.

3. *Attorney fees*

■ Respondent claims that it is not only entitled to attorney fees for defense of the Balder claim, but also for fees incurred in pursuing this declaratory judgment at trial and on appeal. However, respondent has not filed a notice of review pursuant to Minn.R.Civ.App.P. 106. *See also Ford v. Chicago, Milwaukee, St. Paul and Pacific Railroad*, 294 N.W.2d 844, 845 (Minn.1980); *Cleys v. Cleys*, 363 N.W.2d 65, 71 n. 1 (Minn.Ct.App.1985). Thus, respondent has not properly raised the issue of attorney fees for trial of this matter. With respect to fees on appeal, however, we will consider an award if counsel submits an affidavit showing time expended on this appeal within two weeks of the filing date of this opinion.

## DECISION

Because the Balder complaint stated a claim that falls within the policy terms, Aetna was obligated to defend Gamble in that action.

Affirmed.