**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**ZURICH INSURANCE COMPANY, Respondent.**

No. C6–88–2482.

Court of Appeals of Minnesota.

May 16, 1989.

---

Kay Nord Hunt, Kathryn H. Davis, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellant.

Lawrence J. Skoglund, Chadwick, Johnson, Condon, P.A., Minneapolis, for respondent.

Heard, considered and decided by SCHUMACHER, P.J., and PARKER and LANSING, JJ.

## OPINION

SCHUMACHER, Judge.

State Farm Mutual Automobile Insurance Company (State Farm) appeals the trial court's summary judgment in favor of Zurich Insurance Company (Zurich), dismissing State Farm's claim seeking contribution for uninsured motorist benefits paid to the insured.

## FACTS

On May 22, 1984, Oscar Rozendaal was killed when the vehicle he was driving collided with an uninsured motor vehicle. At the time of the accident, Rozendaal owned at least nine automobiles. Two automobiles, a 1983 Dodge Aries and a 1980 Oldsmobile, were insured by State Farm. Six antique or classic automobiles, a 1927 Essex, 1941 Chevrolet Sport, 1949 Packard Club, 1951 Packard four-door, 1958 BMW Isetta and 1949 Chevrolet four-door sedan, were all insured by Zurich. He also owned the 1967 Volkswagen he was driving when he was killed, but carried no insurance on that car.

Through a trustee, Rozendaal's heirs-at-law made claims for damages against the tortfeasor. Because the tortfeasor and the vehicle he was driving were uninsured, the heirs-at-law claimed uninsured motorist benefits under both the State Farm and Zurich policies. State Farm paid its entire uninsured motorist coverage of $200,000 and received a release from the heirs-at-law, specifically providing that State Farm retained subrogation rights against any other uninsured motorist carrier for contribution. Zurich paid $137,500 in uninsured benefits out of its policy limits of $300,000 and obtained a similar release.

Although both policies provide uninsured motorist benefits, the provisions relating to how those benefits should be paid in the event another insurer also provides the benefits are not identical. State Farm's is a standard passenger vehicle policy and

provides uninsured motorist coverage of $100,000 per vehicle, stacked to $200,000 because Rozendaal insured two cars under the policy. As to apportionment, if other uninsured motorist coverage is available, the policy provides:

> If the insured sustains bodily injury while occupying a vehicle which is not *your car* or a newly acquired car, this coverage applies as excess to any other uninsured motor vehicle coverage.

(Emphasis added.) The policy defines "your car" as "the car or the vehicle described on the declarations page." In turn, the declarations page describes the 1983 Aries and 1980 Oldsmobile.

The Zurich policy, entitled "Antique and Classic Auto Policy Agreement," covers antique or classic vehicles. An antique or classic vehicle is defined, in part, as:

> a motor vehicle * * * maintained solely for use in exhibitions, club activities, parades and other functions of public interest; it is not used primarily for the transportation of persons or goods.

The uninsured motorist coverage is $50,000 per vehicle, stacked to $300,000 for the six vehicles. As to the possibility that other uninsured motorist insurance would be available, the policy provides:

> If there is other applicable similar insurance we will pay our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

Unlike the State Farm policy, the Zurich policy also contains a "family owned vehicle" exclusion which excludes uninsured motorist coverage for injury to any person "[w]hile occupying, or when struck by, any motor vehicle or trailer of any type owned by [the insured] or any family member which is not insured for this coverage under this policy."

After paying its full uninsured motorist policy limits to Rozendaal's heirs, State Farm commenced this contribution action against Zurich. State Farm's amended complaint alleged that Zurich's policy provided primary coverage, and State Farm's included only excess coverage. Accordingly, State Farm claimed that Zurich should have to pay its entire policy limit of $300,-000 before State Farm pays anything, which would be only the remaining $37,500. Therefore, State Farm sought contribution in the amount of $162,500, representing the $200,000 it had already paid, less the $37,-500 which it claimed was the amount it was required to pay.

State Farm moved for summary judgment, and Zurich responded with a countermotion for summary judgment to dismiss State Farm's claim on the basis that State Farm's policy provided primary coverage, and that, therefore, State Farm was properly required to pay out its entire policy limit of $200,000 before Zurich was required to pay. The trial court denied State Farm's motion for summary judgment and granted Zurich's motion, thus dismissing State Farm's claim. Summary judgment in favor of Zurich was subsequently entered, and this appeal followed.

### ISSUE

Did the trial court err in determining that coverage under State Farm's policy was effected for the primary purpose of insuring risks arising out of the use of the insured's 1967 Volkswagen such that State Farm was required to pay its entire policy limits and Zurich only the excess?

### ANALYSIS

On appeal from summary judgment this court must determine if there are any genuine issues of material fact and, if not, whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Here, there are no disputed facts; therefore, the only question is whether the trial court erred as a matter of law in concluding that State Farm's policy limits must first be exhausted before Zurich is required to pay.

■ As a preliminary matter, we should note that the "family owned vehicle" exclusion in the Zurich policy is not valid to absolve Zurich of uninsured motorist liability because the exclusion prevents uninsured motorist coverage from following the person (i.e. the insured) while the insured is

operating another vehicle. *See Nygaard v. State Farm Mutual Automobile Insurance Co.*, 301 Minn. 10, 18–19, 221 N.W.2d 151, 156–57 (1974), *cited in Petrich by Lee v. Hartford Fire Insurance Co.*, 427 N.W. 2d 244, 245 (Minn.1988). The legislature in 1985 amended the Minnesota No–Fault Act to allow insurers to exclude uninsured motorist coverage where the insured is occupying a vehicle which he or she owns but has not insured under the policy. 1985 Minn.Laws, 1st Spec.Sess. c. 10, s. 68 (codified at Minn.Stat. § 65B.49, subd. 3a(7) (1988)); *Hanson v. American Family Mutual Insurance Co.*, 417 N.W.2d 94, 96 (Minn.1987). Because the term of Zurich's policy commenced prior to the effective date of the 1985 amendment, however, the rule in *Nygaard* invalidating the exclusion still applies in this case. *See AMCO Insurance Co. v. Lang*, 420 N.W.2d 895, 900 (Minn.1988) (subsequent change in public policy does not validate insurance contract provisions which violated public policy and, therefore, were invalid when the insurance policy was issued).

■ The first step in apportioning coverage where more than one insurer covers the loss is to determine if the apportionment among the insurers can be made without violating the terms of any of the insurance policies. *Integrity Mutual Insurance Co. v. State Automobile & Casualty Underwriters Insurance Co.*, 307 Minn. 173, 175, 239 N.W.2d 445, 446 (1976). We conclude apportionment cannot be made under either policy without violating the other's terms. If State Farm's apportionment provisions were followed, Zurich would have to pay its limits before State Farm became obligated to pay. Such an apportionment, however, would conflict with Zurich's policy provisions which require Zurich and the other insurer to prorate liability based on each insurer's respective policy limits.

■ Where, as here, the policies' apportionment provisions conflict, the court as a matter of law must determine the apportionment "in light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy." *Id.* The *Integrity Mutual* court further articulated:

[T]he insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose payment on the risk was the most incidental to the basic purpose of its insuring intent will be liable last.

307 Minn. at 175–76, 239 N.W.2d at 447.

■ In this case, State Farm's policy covered two vehicles normally used in everyday transportation. In contrast, Zurich's policy covered six vehicles which, by definition, were designed primarily for show, not transportation of persons or goods. Therefore, State Farm anticipated insuring risks created by the use of everyday passenger vehicles which are regularly driven on the roads, while Zurich anticipated only those risks resulting from vehicles whose road use is merely incidental to their primary use in exhibitions or parades. As such, because there is no claim that the involved vehicle, a 1967 Volkswagen, was an antique or classic vehicle, or that it was otherwise primarily intended for exhibition, we conclude the State Farm policy was effected for the primary purpose of insuring the risk in this case and that Zurich's policy only incidentally anticipated the risk. Consequently, State Farm, as primary insurer, must pay its total uninsured liability limit of $200,000 before Zurich is obligated to pay. *See id.* at 175, 239 N.W.2d at 447.

The fact that State Farm provided for only excess coverage and Zurich allowed for pro rata sharing of liability is not determinative. Although the majority rule is to simply require the insurer with the pro rata provision to first exhaust its coverage, in Minnesota courts look beyond the "other insurance" clauses to determine each policy's respective total insuring intent. *Interstate Fire & Casualty Co. v. Auto Owners Insurance Co.*, 433 N.W.2d 82, 85 (Minn. 1988). This we have done in reaching our conclusion.

## DECISION

The trial court did not err in determining that coverage under State Farm's policy

was effected for the primary purpose of insuring the risk involved in this case and that, therefore, State Farm was liable for its full policy limits and Zurich was liable only for the excess.

Affirmed.