CPT CORPORATION, et
al., Respondents,

v.

ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Appellant.

No. C9–93–2068.

Court of Appeals of Minnesota.

May 10, 1994.

Review Denied July 27, 1994.

748

Richard A. Lind, William L. Davidson, Lind, Jensen & Sullivan, P.A., Minneapolis, for appellant.

Michael Berens, Celeste E. Culberth, Kelly & Berens, P.A., Minneapolis, for respondents.

Considered and decided by KLAPHAKE, P.J., and KALITOWSKI and FOLEY *, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant St. Paul Fire and Marine Insurance Company (St. Paul) seeks review of the trial court's order denying its posttrial motions. St. Paul contends the trial court erred in concluding: (1) St. Paul had a duty to defend respondent CPT Corporation, Inc. (CPT) in an underlying action; (2) St. Paul had a duty to indemnify CPT; and (3) St. Paul must contribute to the amount paid to settle the underlying action by CPT's other insurer, respondent Aetna Casualty and Surety Company (Aetna).

## FACTS

In October 1988, three former CPT employees brought a federal suit against CPT, its directors, and the trustee of CPT's employee stock option plan (ESOP), alleging defendants breached their fiduciary duties under the Employee Retirement Income Security Act (ERISA). The employees' complaint alleged, in part, that CPT and its directors wrongfully participated or acquiesced in certain actions by the ESOP trustee. The complaint also alleged that the trustee failed to invest ESOP funds in assets other than CPT shares and improperly attempted to maintain control over CPT by voting the ESOP stock in favor of himself and other incumbent management.

At the time of the employees' suit, CPT was insured under policies issued by both Aetna and St. Paul. Aetna's "Pension and Welfare Fund Fiduciary Responsibility Policy" provides coverage for any breach of a "fiduciary duty by the Insured in the discharge of duties as respects the Trust or Employee Benefit Plan." The Aetna policy contains a $2,000,000 policy limit, an annual premium of $3,776, and a $50,000 deductible. St. Paul's "Commercial General Liability" policy contains "Employee Benefit Program Administration Liability Protection," which

provides coverage for losses resulting from "an error, omission or negligent act committed in the administration of [CPT's] employee benefits." St. Paul's policy contains a policy limit of $500,000 for each wrongful act up to a total limit of $1,500,000, an annual premium of $339, and a $1,000 deductible.

CPT notified Aetna and St. Paul of the federal ERISA action. Aetna defended CPT, but St. Paul denied coverage and refused to defend CPT. In December 1989, CPT brought this action against St. Paul seeking to recover the costs it incurred in defending the underlying action. On June 27, 1990, the federal district court approved a settlement of the underlying action wherein Aetna agreed to pay its liability limit of $2,000,000. Following the settlement, Aetna joined CPT in this action against St. Paul, seeking contribution for the amount it paid to settle the underlying action.

In March 1992, the trial court denied cross-motions for summary judgment on the issue of St. Paul's duty to defend, concluding that there were genuine issues of fact regarding the scope of coverage provided by St. Paul's policy. In November 1992, the trial court granted partial summary judgment in favor of Aetna, concluding that Aetna would be entitled to contribution from St. Paul "if it is determined that the St. Paul policy covers any claim in the underlying action."

Following a bench trial, the trial court issued an order concluding: (1) St. Paul had a duty to defend and CPT was entitled to recover its costs in defending the underlying action in the amount of $49,000 plus interest; and (2) Aetna was entitled to contribution from St. Paul on a pro rata basis in the amount of $400,000 plus interest. The trial court entered judgment on April 28, 1993. On June 4, 1993, St. Paul moved for amended findings of fact and conclusions of law or, in the alternative, for a new trial. The trial court denied St. Paul's motions on September 15, 1993. St. Paul appeals from the denial of its posttrial motions.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## ISSUES

1. Did the trial court err in concluding that St. Paul had a duty to defend CPT?

2. Did the trial court err in concluding that St. Paul had a duty to indemnify CPT and that St. Paul must contribute to the settlement between CPT and Aetna?

## ANALYSIS

### I.

St. Paul contends the trial court erred in concluding that St. Paul had a duty to defend CPT. We disagree.

Whether an insurer has a duty to defend is an issue of policy interpretation. "Interpretation of an insurance policy is a question of law." *Garrick v. Northland Ins.*, 469 N.W.2d 709, 711 (Minn.1991). Although the trial court denominated some conclusions as "findings of fact," we are not bound by the trial court's erroneous classification of legal issues. *Dworsky v. Vermes Credit Jewelry*, 244 Minn. 62, 66–67, 69 N.W.2d 118, 122 (1955).

An insurer has a duty to defend "where any part of the claim is arguably within the scope of the policy coverage." *Economy Fire & Casualty v. Iverson*, 445 N.W.2d 824, 826 (Minn.1989). Here, St. Paul's policy covers losses that result "from an error, omission or negligent act committed in the administration of [CPT's] employee benefits." Because St. Paul's policy fails to define "administration," we must interpret the term according to its "plain, ordinary, or popular meaning." *See Smith v. St. Paul Fire & Marine Ins.*, 353 N.W.2d 130, 132 (Minn.1984). In its ordinary usage, "administration" includes the "[d]irection or oversight of any office, service, or employment." Black's Law Dictionary 44 (6th ed. 1990).

St. Paul's duty to defend is based on the allegations contained in the plaintiff's complaint. *See Iverson*, 445 N.W.2d at 826. The employees' complaint in the underlying action alleged, in part, that CPT and its directors participated or acquiesced in certain actions by the trustee. Because the ordinary usage of "administration" includes oversight of any office, the employees' allega-

tion that CPT and its directors acquiesced in the trustee's conduct is arguably within the definition of "administration." Because St. Paul's policy covers negligence in the "administration" of CPT's employee benefits, the employees' allegation that CPT and its directors acquiesced in the trustee's conduct is arguably within the scope of St. Paul's policy coverage. *See Prahm v. Rupp Constr.*, 277 N.W.2d 389, 390 (Minn.1979) (ambiguities must be resolved in favor of the insured and "the burden is on the insurer to prove that the claim clearly falls outside the coverage afforded by the policy").

In determining coverage, this court must also consider policy exclusions. *Illinois Farmers Ins. v. Coppa*, 494 N.W.2d 503, 505 (Minn.App.1993). Exclusions are strictly construed against the insurer. *Id.* at 506. First, St. Paul's policy excludes claims "that result from the investment or non-investment of employee benefit funds." The employees' complaint, however, included allegations that the trustee wrongfully voted the ESOP stock and that CPT and its directors acquiesced in such conduct. Because these allegations do not involve the investment or non-investment of employee benefit funds, this exclusion is not applicable. Second, St. Paul's policy denies coverage for "claims that result from dishonest, intentionally fraudulent, criminal or malicious acts or omissions of any protected person." This exclusion does not apply, however, to any protected persons who did not: (1) personally participate in any such action or omission; or (2) remain passive after having personal knowledge of any such act or omission. Therefore, this exclusion does not apply to the employees' allegations that CPT and its directors acquiesced in the trustee's conduct.

Because the employees' allegations are arguably within the scope of St. Paul's policy coverage, we conclude St. Paul had a duty to defend CPT. Accordingly, the trial court did not err in awarding CPT the costs it incurred in defending the underlying action in the amount of $49,000.

### II.

St. Paul contends the trial court erred in concluding that: (1) St. Paul had a duty to

indemnify CPT; and (2) St. Paul is required to contribute to the settlement between CPT and Aetna. Because we conclude the contribution issue is dispositive, we assume without deciding that St. Paul had a duty to indemnify CPT.

Respondents argue that the contribution issue is not properly before this court because the trial court addressed this issue in a pretrial summary judgment order. *See Stockdale Bancorporation v. Kjellberg,* 479 N.W.2d 438, 438 (Minn.App.1992) (pretrial orders are reviewable only on appeal from a final judgment). Where a party appeals from the trial court's denial of its post-trial motions, rather than from the judgment itself, our review is ordinarily limited to errors that occurred during trial and were identified by appellant in its motion for a new trial. *See id.* We may review any matter, however, "as the interest of justice may require." *See* Minn.R.Civ.App.P. 103.04. We conclude that the interest of justice requires us to review the contribution issue because: (1) the pretrial summary judgment order was not appealable; (2) St. Paul expressly requested a timely decision on its motion in order to fully preserve its right to appeal, but the deadline for appeal expired before the trial court issued its order; (3) St. Paul raised the contribution issue in its motion for a new trial; and (4) the trial court addressed the contribution issue in its order denying St. Paul's motion for a new trial.

Whether St. Paul has a duty to contribute to the settlement between CPT and Aetna is a question of law that we review de novo. *See State Farm Mut. Auto. Ins. v. Zurich Ins.,* 439 N.W.2d 751, 754 (Minn.App. 1989). Where more than one insurer covers the loss, we must determine whether the "other insurance" clauses conflict, and if so, how liability should be apportioned. *Illinois Farmers Ins. v. Depositors Ins.,* 480 N.W.2d 657, 659 (Minn.App.1992). Here, St. Paul's policy includes a pro rata clause, whereas Aetna's policy contains an excess clause. A pro rata clause conflicts with an excess clause. *Interstate Fire & Casualty v. Auto–Owners Ins.,* 433 N.W.2d 82, 85 (Minn.1988) (citing *Integrity Mut. Ins. v. State Auto &*

*Casualty Underwriters Ins.,* 307 Minn. 173, 176–77, 239 N.W.2d 445, 447 (1976)).

Once a conflict is identified, we must apply either the "total policy insuring intent" analysis or the "closeness to the risk" analysis to determine the proper apportionment. *Illinois Farmers,* 480 N.W.2d at 660–61. The "total policy insuring intent" analysis examines the primary policy risks upon which each policy's premiums were based and the primary function of each policy. *Integrity,* 307 Minn. at 175, 239 N.W.2d at 446. The "closeness to the risk" analysis considers the following factors: (1) which policy describes the accident-causing instrumentality most specifically; (2) which premium reflects a contemplation of the greater exposure; and (3) which policy covers the risk primarily as opposed to incidentally. *Auto Owners Ins. v. Northstar Mut. Ins.,* 281 N.W.2d 700, 704 (Minn.1979). The "total policy insuring intent" analysis is a broader test, but only in the sense that it involves more than a mechanical application of the "closeness to the risk" analysis. *See Richardson v. Ludwig,* 495 N.W.2d 869, 874 (Minn.App.1993), *pet. for rev. denied* (Minn. Apr. 20, 1993).

We conclude the Aetna policy is primary and the St. Paul policy is secondary under either analysis. First, Aetna's policy expressly provides coverage for breaches of fiduciary duties by the ESOP trustee. St. Paul's policy, however, only covers losses that result from an error, omission or negligent act in the "administration" of the ESOP, and specifically excludes claims "that result from the investment or non-investment of employee benefit funds." *See Gamble Skogmo, Inc. v. Aetna Casualty & Sur.,* 390 N.W.2d 343, 348 (Minn.App.1986) (policy that contemplates risk with greater specificity held primary). Second, Aetna's "Fiduciary Responsibility" premium was $3,776 whereas St. Paul's "Administration Liability" premium was only $339. The difference between the premiums indicates that St. Paul's policy covers the losses only incidentally, if at all. Because Aetna settled the underlying action for its policy limit, St. Paul, as the secondary insurer, is not liable for any excess. *See Integrity,* 307 Minn. at 175, 239 N.W.2d at 447 (if one insurer is primary and the other

secondary, the primary insurer is liable up to its policy limit, and the secondary insurer is liable only for any excess).

Because St. Paul's policy is secondary to Aetna's policy and Aetna's policy covered the entire settlement, the trial court erred in concluding that St. Paul must contribute to the settlement. In light of our disposition of this issue, we need not address the other issues raised by St. Paul.

## DECISION

The trial court properly concluded that St. Paul had a duty to defend CPT. The trial court erred in concluding that St. Paul must contribute to the settlement between CPT and Aetna.

**Affirmed in part and reversed in part.**