# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1882

_____

Zup's of Babbitt-Aurora, Inc.; Security National Insurance Co., Inc.

*Plaintiffs - Appellants*

v.

West Bend Mutual Insurance Company, Inc.

*Defendant - Appellee*

_____

No. 14-1950

_____

Zup's of Babbitt-Aurora, Inc.; Security National Insurance Co., Inc.

*Plaintiffs - Appellees*

v.

West Bend Mutual Insurance Company, Inc.

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 10, 2015
Filed: May 21, 2015

_____

Before GRUENDER, SHEPHERD, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

This is a suit to determine how two insurers should pay for the income lost when a supermarket burned down. On cross-motions for summary judgment, the district court[1] determined that Security National Insurance Co., Inc. ("Security National") was liable and West Bend Mutual Insurance Company, Inc. ("West Bend") was not. We affirm this holding and dismiss the appeal of West Bend's counterclaim as moot.

Zup's of Babbitt-Aurora, Inc. ("Zup's") owned a strip mall in Babbitt, Minnesota, where it operated a supermarket and rented the remaining space to other businesses. When the strip mall burned down in 2011, Zup's lost income from its supermarket as well as rent from its tenants. Zup's had two relevant insurance policies, one from Security National and one from West Bend. The parties agree that Security National's policy covered Zup's lost supermarket income and West Bend's policy covered Zup's lost rent. The question here is whether West Bend is also responsible for Zup's lost supermarket income.

The Security National policy explicitly covered supermarkets. Most obviously, it repeatedly referred to "supermarkets." It charged premiums for "caterers." And it had endorsements related to "spoilage" and "liquor liability." This policy covered

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

several Zup's supermarkets, and one premium was specifically allocated to cover the income of the Babbitt supermarket.

As relevant here, the West Bend policy covered Zup's rental income from leasing space in the strip mall. The policy did not mention supermarkets or charge supermarket-specific premiums. Further, the phrase "lessor's risk only" appeared on the declarations page. This policy, however, ultimately covered Zup's "actual loss of Business Income" without specifically limiting "Business Income" to rent or excluding business income from the supermarket.

Both policies had "other insurance" clauses. Such clauses attempt to order recovery from multiple insurers. As the policies explained in nearly identical language, "[i]f there is other insurance covering the same loss or damage," the insurer "will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance." In short, each policy tried to make any others pay first.

After the fire, Zup's sought payment from Security National for the lost supermarket income and payment from West Bend for the lost rent. Security National then learned of the West Bend policy and concluded that West Bend also had insured the lost supermarket income. Security National agreed to pay Zup's fully for the lost supermarket income. Then (together with Zup's) Security National sued West Bend for West Bend's purported share of the payment.

The district court faced three primary issues. First, the insurers disputed whether the West Bend policy covered the lost supermarket income at all. West Bend insisted that its policy covered Zup's as a "lessor"—that when the policy covered "actual loss of Business Income," that meant loss of rent. After all, West Bend insisted, if the policy had been meant to cover lost supermarket income, it would have charged premiums related to supermarkets. Security National, in turn, read the policy broadly. To Security National, the "Business Income" coverage included lost

supermarket income, not just rent, because Zup's was in the supermarket business. Second, West Bend counterclaimed for reformation. It argued that if the district court did find that the West Bend policy covered the lost supermarket income, then the court should excise that coverage because the parties did not intend to contract for it. And third, the insurers disputed the extent of their liabilities if the West Bend policy covered the lost supermarket income and the court did not reform the policy. In that case, both policies would cover the lost supermarket income, but each policy's "other insurance" clause would purport to shift the cost onto the other insurer.

After the insurers filed cross-motions for summary judgment on both Security National's claim for payment and West Bend's counterclaim for reformation, the district court first concluded that West Bend's policy covered the lost supermarket income. It next held that reformation was unwarranted. Finally, the court held that even though both policies covered the lost supermarket income, Minnesota law made only Security National responsible for it.

Although the parties reargue these three issues on appeal, we reach only the last one. As we will see, even if the West Bend policy covered the lost supermarket income and even if the policy should not be reformed, Security National alone is liable. We thus assume that Security National would prevail on the first two issues, and we address only the situation in which the West Bend policy, unreformed, covered the lost supermarket income.

This court reviews a grant of summary judgment *de novo*. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here summary judgment turns on West Bend's liability for Zup's lost supermarket income. The parties agree that this is a matter of Minnesota law, which we also review *de novo*. *See Integrity Floorcovering, Inc. v. Broan-Nutone, LLC*,

-4-

521 F.3d 914, 917 (8th Cir. 2008); *U.S. Fid. & Guarantee Ins. Co. v. Commercial Union Midwest Ins. Co.*, 430 F.3d 929, 933 (8th Cir. 2005).

When two insurance policies cover the same loss and their "other insurance" clauses conflict, "Minnesota courts apply two different tests in apportioning liability." *U.S. Fid.*, 430 F.3d at 934. The first is the "total policy insuring intent" analysis, "a broader test [that] 'examines the primary policy risks upon which each policy's premiums were based and the primary function of each policy.'" *Id.* (quoting *CPT Corp. v. St. Paul Fire & Marine Ins. Co.*, 515 N.W.2d 747, 751 (Minn. Ct. App. 1994)). The second test asks which policy was closer to the risk. *Id.* "The tests are similar, though application of the total policy insuring intent analysis is less mechanical than the closer to the risk analysis." *Id.* Ultimately a court will determine whether insurers are concurrently liable or whether coverage should stack. *Integrity Mut. Ins. Co. v. State Auto. & Cas. Underwriters Ins. Co.*, 239 N.W.2d 445, 446-47 (Minn. 1976). If, as Security National argues, the insurers are concurrently liable, "each must pay a pro rata share of the entire loss." *Id.* at 447. But if one policy is primary and the other secondary, then coverage stacks; that is, "the primary insurer must pay up to its limit of liability, and then the secondary insurer must pay for any excess up to its own limit." *Id.* at 447. Here both tests show that Security National's policy was primary and West Bend's only secondary.

Security National's "total policy insuring intent" plainly included lost supermarket income because the policy covered, in its language, "Business Income" lost by "supermarkets." Indeed, Security National charged premiums specifically for supermarkets, and it allocated a premium specifically for the income from the supermarket that burned. In contrast, the West Bend policy

> does not mention supermarkets or grocery stores, and nothing in the
> policy even hints that [Zup's] has any business income other than as a
> lessor of space in the strip mall. . . . None of the premium for West

-5-

Bend's policy was specifically allocated to coverage of lost business income, much less to coverage of lost business income of a particular grocery store. An educated layperson who read through the two policies would readily discern that the Security National policy insured the income of the Babbitt grocery store, but would have no inkling that the West Bend policy did likewise.

*Zup's of Babbitt–Aurora, Inc. v. W. Bend Mut. Ins. Co., Inc.*, No. 12-CV-3084, 2014 WL 1117019, at \*6 (D. Minn. Mar. 20, 2014). In short, Security National provided a policy for supermarkets, and West Bend provided a policy for the strip mall. We thus have no trouble concluding that Security National's total policy insuring intent was to cover lost supermarket income and that West Bend's was not. *See Interstate Fire & Cas. Co. v. Auto–Owners Ins. Co.*, 433 N.W.2d 82, 83, 86 (Minn. 1988) (analyzing coverage for a student's injury during gym class under the "total policy insuring intent" test and concluding that homeowner's insurance covering the student was secondary to the school's umbrella policy, which "contemplated coverage for accidents and injuries sustained on school property during school events").

Similarly, Security National's policy was closer to the risk. This test asks three questions:

> (1) Which policy specifically described the accident-causing instrumentality? (2) Which premium is reflective of the greater contemplated exposure? (3) Does one policy contemplate the risk and use of the accident-causing instrumentality with greater specificity than the other policy—that is, is coverage of the risk primary in one policy and incidental to the other?

*U.S. Fid.*, 430 F.3d at 934 (quoting *Ed Kraemer & Sons, Inc. v. Transit Cas. Co.*, 402 N.W.2d 216, 222 (Minn. Ct. App. 1987)). The first factor is a wash because both

policies specifically contemplated fire as a cause of accidents. Nor is the second factor helpful because, though the West Bend policy had higher premiums, those premiums covered broader risks than the specific premiums in the Security National policy. *Cf. U.S. Fid.*, 430 F.3d at 936. But the third question, whether risk coverage was primary in only one policy, weighs heavily in favor of the Security National policy being closer to the risk. As we just explained, Security National provided a policy for supermarkets and West Bend provided a policy for the strip mall. *See Auto Owners Ins. Co. v. Northstar Mut. Ins. Co.*, 281 N.W.2d 700, 704 (Minn. 1979) (analyzing coverage for a boating accident under the "closeness to the risk" test and concluding that coverage of the risk was incidental in a homeowner's policy and primary in a policy "specifically designed to insure against comprehensive liability for the accident"). We thus conclude that the "closeness to the risk" test, like the "total policy insuring intent" test, deems Security National's coverage primary.[2]

Security National does not seriously challenge these dispositive characterizations. Rather, Security National urges us to follow its reading of *Nesheim v. Iowa Mutual Insurance Co.*, 305 N.W.2d 320 (Minn. 1981). Security National argues that under *Nesheim*, where two policies "are on the same property, [on] the same interest in the property, in favor of the same party, and against the same risks,"

---

[2] In conducting these two tests, the district court considered extrinsic evidence suggesting that neither Zup's nor West Bend seemed to think that West Bend insured the lost supermarket income. Security National objects to the court looking beyond the language of the policies. Although we have stated that courts do look "beyond the language of the policies" to determine insurer priority, that statement seems to have referred to looking beyond the priority rules found in "other insurance" clauses, not looking beyond the language of the policies as a whole. *U.S. Fid.*, 430 F.3d at 933 (citing *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 587 (Minn. 2003)). Regardless, we need not address Security National's concern further. Here Zup's and West Bend's views make no difference; they only confirm that Security National was the primary insurer of the lost supermarket income. We thus need not and do not decide whether the district court properly considered those views.

then those two policies have concurrent "total policy insuring intent," and a loss falls *pro rata* on both. *Id.* at 321-22. And here, under our assumptions, both the Security National and West Bend policies did insure the same supermarket's income in favor of Zup's against the risk of fire. Thus, Security National concludes, *Nesheim* requires us to allocate the loss *pro rata*. But this argument simply omits some of *Nesheim*'s language. Consistent with the "total policy insuring intent" test, what *Neisheim* actually asks is whether "[t]he *intent* of each policy was to protect the same interest in the same property in favor of the same person against a casualty loss by fire." *Id.* at 322 (emphasis added). We have answered this question already.

Because West Bend's policy was secondary to Security National's, West Bend need pay only if Security National's coverage was exhausted. *See Integrity Mut. Ins. Co.*, 239 N.W.2d at 447. Security National does not dispute that its coverage was not exhausted. Accordingly, with respect to Security National's complaint, we affirm the grant of summary judgment to West Bend. We dismiss the appeal of West Bend's counterclaim as moot.

_____