**Phillip C. RICHARDS, et al.,
Appellants,**

v.

**FIREMAN'S FUND INSURANCE
COMPANY, et al., Respondents.**

No. C3–87–890.

Court of Appeals of Minnesota.

Jan. 5, 1988.

Review Denied March 23, 1988.

William L. Tilton, Tilton & Rosenbaum, St. Paul, for appellants.

Dale M. Wagner, Philip A. Pfaffly, Moss & Barnett, Minneapolis, for respondents.

Heard, considered and decided by RANDALL, P.J., and HUSPENI and STONE,* JJ.

## OPINION

HUSPENI, Judge.

In December of 1986, appellants, Phillip Richards and Nicholas Stevens, sought a declaration that respondent, Fireman's Fund Insurance Company, had a duty to defend and indemnify them in a law suit brought against them by a former employee. The trial court found that the complaint in question was not covered by the policy issued by respondent and that there was no duty to defend. Appellants appeal from the summary judgment awarded to respondent. We affirm.

## FACTS

Appellants, who owned an agency in Rochester, Minnesota, were general agents for Minnesota Mutual Life Insurance Company. Appellants recruited, trained and supervised agents to sell life insurance policies, but did not themselves sell insurance. The Rochester agency was managed by an employee, Nicholas Gikas. Appellants agreed to recruit and train agents for Gikas to manage. During 1981, Gikas became dissatisfied because appellants failed to recruit for the agency. In September of 1981, Gikas' contract of employment was terminated. On May 24, 1982, Gikas initiated an action against appellants claiming damages for breach of the agreement between them.

The Gikas complaint stated in pertinent part:

### COUNT 1.

\*     \*     \*     \*     \*     \*

#### II.

[Gikas] was an employee of Minnesota Mutual Insurance Company * * *, with income of approximately Seventy Five Thousand ($75,000.00) Dollars per year by January 1978, as an agent writing

insurance for said company in the Rochester, Minnesota area medical market.

#### III.

On or about January 1, 1978, [Gikas] entered into an agreement with [appellants] to serve as * * * manager of an insurance agency * * * in the Rochester area. [Appellants] were to supply support and assistance for the purpose of advancing sales of Minnesota Mutual Insurance Company policies * * *.

#### IV.

[Appellants] specifically represented that they would hire and train suitable agents to be employed in the new Rochester agency.

#### V.

In reasonable reliance upon said representations and believing said representations to be true and correct in every respect, [Gikas] ceased writing insurance as an agent himself in the medical market, expended large sums of money and much time in efforts to establish said new agency, and was caused to lose expected profits * * *.

#### VI.

That said losses were caused by [appellants'] willful failure to hire and train suitable agents * * *.

\*     \*     \*     \*     \*     \*

### COUNT 2.

\* * *

#### VIII.

On said date [appellants] terminated [Gikas'] agreement with them, retaining the benefits of said agents for present and future employment, all without the payment of any amount to [Gikas] as reimbursement for the value of said services rendered by [Gikas], and to the unjust enrichment of [appellants] * * *.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## COUNT 3.

\* \* \* \* \* \*

### II.

On or about September 1, 1981, [appellants] wrongfully terminated [Gikas'] agreement with [appellants], causing [Gikas] damages in the nature of lost wages, lost expected profits, and great emotional distress, \* \* \*.

## COUNT 4.

\* \* \* \* \* \*

### III.

Pursuant to said agreement, [Gikas] is owed commissions for the next twelve (12) months from and after September 1, 1981 \* \* \*.

## COUNT 5.

\* \* \* \* \* \*

### II.

Said actions by [appellants] were with willful indifference to the rights of [Gikas] contrary to the provisions of Minnesota Statutes § 549.20 and § 549.21, entitling [Gikas] to punitive damages \* \* \*.

In 1980, appellants each purchased life underwriter's professional liability coverage from respondent. The policy provided life underwriter's professional liability coverage of $1,000,000 for each claim. The insuring clause provided that:

[The insurer] will pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of liability for:

(a) Breach of duty as a Life Underwriter (as hereinafter defined), or

(b) Libel, slander or defamation of character;

claim for which is made against him during the currency of this policy by reason of *any negligent act, error or omission* committed or alleged to have been committed by the Insured *in his capacity as a Life Underwriter* \* \* \*. (Emphasis added.)

The policy defined the term "Life Underwriter" as used in the policy as meaning:

a Life and Accident & Health Insurance Agent, *Life and Accident & Health Insurance General Agent* or Manager or a Life & Accident & Health Insurance Broker. (Emphasis added.)

The policy does not give any further clarifying definition.

A pertinent part of the life underwriter's professional liability policy partnership-corporate insurance agency endorsement provided:

It is agreed the legal partnership or corporate insurance agency under which the Named Insured is operating \* \* \* in his capacity as a Life Underwriter is hereby named as an additional Insured under this Life Underwriters Professional Liability Policy, *but only with respect to any negligent act, error or omission committed,* or alleged to have been committed by the individual named as the Insured \* \* \* *acting within the scope of his duties solely in respect to the insurance business* \* \* \*. (Emphasis added.)

Because of an alleged misunderstanding relating to coverage, appellants themselves defended the action until February of 1983 at which time they contacted respondent. On April 8, 1983, respondent denied coverage and refused to defend the action. Respondent contends that the complaint alleged willful acts by appellants, and such acts were not covered by the policy. Appellants argued that Gikas' allegations were broad enough to fall within the coverage provided by respondent.

On December 17, 1986, appellants moved for a declaration that respondent was obligated to defend the Gikas action. Appellants alleged in their complaint:

XV. That in the course of their duties as General Agents, [appellants] terminated the services of one Nicholas Gikas on July 28, 1981.

\* \* \* \* \* \*

XVII. That among other things [appellants] were being sued for inadequately performing their duties as General Agents in training and recruitment.

In response, respondent moved for a summary judgment dismissing the claim.

In February 1987, the trial court entered a judgment in favor of respondent. The trial court memorandum stated:

It is not clear that [appellants'] alleged conduct was in the scope of their duties as general agents for purposes of this insurance policy. * * * However, the primary difficulty with [appellants'] argument is that the policy in question does not insure against claims arising out of *any* acts or omissions committed in the insureds' capacity as general agents; rather, the insuring clause refers only to *negligent* acts or omissions. * * * In this case, the word "negligent," if it is to have any effect at all, must be construed as restricting the insurer's liability to claims of *negligent* breach of duty.

    *     *     *     *     *     *

* * * [T]he policy covers only claims arising out of *negligent* acts or omissions, and thus the issue is not only whether recruiting and training agents constituted part of [appellants'] professional duties, but also whether their failure to recruit and train was negligent. * * *

In this case, then, *the parties clearly contracted for insurance covering claims for breach of professional duty arising out of any negligent acts, errors or omissions on the part of [appellants].* [Emphasis added by appeals court.] A careful review of the record indicates that Gikas' claim against [appellants] does not fall into that category. * * * [T]he correspondence preceding the litigation indicates that the essence of Gikas' claim is breach of contract based on [appellants'] failure to fulfill specific promises with regard to recruitment and training. * * *

The record further indicates that [appellants'] failure to recruit was not "negligent" in the sense that it resulted from error or oversight. * * * Gikas' claim against [appellants] thus rests not upon a negligent act, error or omission, but upon [appellants'] intentional failure to perform a specific agreement. As such, it is outside the scope of policy coverage.

* * * [T]he record shows that Gikas' claim against [appellants] is founded upon their intentional conduct in breaching a specific agreement. Thus, as a matter of law, the claim is not covered by a policy insuring against claims based upon negligent acts or omissions, and regardless of the merits of the Gikas claim, [respondent] is not obligated to defend against it.

The trial court denied appellants' motion for partial summary judgment on the issue of respondent's duty to defend and granted summary judgment in favor of Fireman's Fund.

## ISSUES

1. Did the Gikas complaint make allegations which fall within the coverage of the professional liability policy issued by Fireman's Fund Insurance Company?

2. Did the appellants' actions in relation to Gikas constitute a breach of duty as a life underwriter?

## ANALYSIS

When reviewing the grant of a summary judgment, this court determines whether there were any genuine issues of material fact before the trial court and whether the law was properly applied. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Because the parties agree as to the facts, our review is limited to determining whether the trial court erred as a matter of law.

An insurer's duty to defend a claim made against its insured is determined by the nature of the allegations in the complaint read in the context of the policy terms. In *Prahm v. Rupp Construction Company*, 277 N.W.2d 389 (Minn.1979), the supreme court stated:

The obligation to defend is contractual in nature and is determined by the allegations of the complaint and the indemnity coverage of the policy. If any part of a cause of action is arguably within the scope of coverage, the insurer must defend. Any ambiguity is resolved in favor of the insured, and the burden is on the insurer to prove that the claim clearly

falls outside the coverage afforded by the policy. If the claim is not clearly outside coverage, the insurer has a duty to defend.

*Id.* at 390. If the allegations are only partly within the coverage, the insurer usually has the duty to defend. *Grain Dealers Mutual Insurance Company v. Cady,* 318 N.W.2d 247, 251 (Minn.1982). The trial court emphasized Count 1 and we agree that if there is coverage under this policy, it would arise from that count.

Respondent disagrees with appellants' argument that at least part of Gikas' complaint falls within the policy coverage and contends that it has no duty to defend because the complaint makes no allegation of negligence. In addition, respondent maintains that even if the complaint alleged negligence, there would be no duty to defend in this case because the policy covers only negligent acts or omissions committed by appellants in their roles as life underwriters.

The language used in respondent's policy is clear and unambiguous and must, therefore, be given its plain and ordinary meaning. *Bobich v. Oja,* 258 Minn. 287, 293–5, 104 N.W.2d 19, 24–5 (1960). We may not read the policy to provide coverage where none was purchased. *Simon v. Milwaukee Automobile Mutual Insurance Company,* 262 Minn. 387, 391, 115 N.W.2d 40, 49 (1962). Upon review of the policy language, we conclude that it provided coverage only for the commission of a negligent act or omission.

## I.

■ First, we must examine the Gikas complaint to determine whether or not an allegation of negligence is made therein. The trial court determined that the Gikas claim alleged only intentional failure to perform a specific agreement for which there was no coverage under the policy.

Appellants argue that the trial court's analysis of the Gikas complaint was erroneous and that the policy, as it applied to breach of a professional duty, only excluded "any fraudulent or criminal act." Appellants also stress the policy's lack of an "intentional act" exclusion clause. Respondent argues, and we agree, that consideration may be given to exclusionary clauses only if, and after, the Gikas complaint is brought within the coverage afforded by the policy.

Appellants point to *Plath v. Plath,* 402 N.W.2d 577 (Minn.Ct.App.1987), *pet. for rev. granted* (Minn. Apr. 29, 1987) to support their proposition that the trial court "erroneously defined negligence in an extremely narrow manner as something resulting from error or oversight." In *Plath* we made the distinction between negligence and an intentional tort. This case is distinguishable as it involves the distinction between negligence and breach of contract.

Additionally, we find appellants' reliance upon *School District No. 1, Multnomah County v. Mission Insurance Company,* 58 Or.App. 692, 650 P.2d 929 (1982), *pet. for rev. denied* 294 Or. 682, 662 P.2d 725 (1983) is misplaced. That case is concerned with the difference between intentional discrimination, which the *Mission* court determined was not within the professional liability coverage, and discrimination based upon disparate impact which was held to be covered.

After thoroughly examining the Gikas complaint, we must conclude that Gikas alleged solely breach of his contract of employment and claimed damages for the consequences which flowed from the alleged breach. We find no language in the complaint which suggests that appellants acted negligently. Consequently, we agree with the trial court that the Gikas complaint makes no allegation which falls within the coverage afforded by respondent's policy. Therefore, respondent has no duty to defend.

## II.

■ Inasmuch as we have determined that the Gikas complaint does not allege negligence, we are not required to reach the question of whether appellants' actions amounted to a breach of their professional duty. We will, however, address this issue because of the reference made to it by the

trial court, and the trial court's possible partial reliance upon it as a factor in determining that there was no coverage under the policy.

Appellants challenge respondent's contention that the "duty" covered by the policy was limited to the duty which a life underwriter owes to members of the general public. They contend that "it is clear by the language of the policy that a General Agent or Manager is something more than a mere Agent, and must therefore have professional duties apart from those of a simple agent." Appellants claim that Minnesota has soundly rejected the limited definition of professional "duty" urged by respondents, and relies upon *Lyons v. American Home Assurance Co.*, 354 N.W. 2d 892 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Jan. 9, 1985) to support their claim. However, appellants misconstrue *Lyons.* In that case, this court stated that a dispute between partners was covered by a lawyer's professional liability policy because the dispute arose out of an "act or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer."

Appellants do not contend that their relationship with Gikas had any basis other than in contract. They simply dispute the nature of his contract. However, a malpractice claim cannot arise out of a contract which was not executed as a part of the practice of a profession. Even if we were to assume for the purpose of analyzing this issue that the Gikas complaint alleged negligence on the part of appellants, that negligence would have been alleged in relationship to Gikas as appellants' employee. We conclude that the employment relationship between Gikas and appellants was not contemplated by respondent's insurance policy.

### DECISION

The Gikas complaint did not make allegations which fell within the coverage afforded by the life underwriter's professional liability policy coverage provided by Fireman's Fund Insurance Company. The in-

surer, therefore, has no duty to defend the Gikas claim against appellants.

Affirmed.