### ST. PAUL FIRE & MARINE INSURANCE COMPANY, Respondent,

v.

**George E. BRIGGS, the Estate of Michael P. Wardwell, Defendants,**

**Clifford H. Yentes, Respondent,**

**Lowell C. Brutlag, Appellant,**

v.

**Sheridan J. BUCKLEY, as trustee in Bankruptcy for the Estate of Briggs Transportation Co., counterclaimant-intervenor, Respondent.**

Nos. C9–90–1519, C4–90–1539.

Court of Appeals of Minnesota.

Dec. 24, 1990.

Review Denied March 15, 1991.

James M. Njus, Meyer, Njus, Anderson, Johnson & Nettles, P.A., Michael L. Brutlag, Brutlag, Miller & Okoneski, P.A., Minneapolis, for appellant.

Thomas P. Kane, John Michael Stoxen, Oppenheimer, Wolff & Donnelly, St. Paul, for St. Paul Fire and Marine Ins. Co.

Corey J. Ayling, O'Connor & Hannan, Minneapolis, for Clifford H. Yentes and Sheridan J. Buckley.

Considered and decided by SCHUMACHER, P.J., and PARKER and NIERENGARTEN,* JJ.

## OPINION

SCHUMACHER, Judge.

Respondent St. Paul Fire and Marine Insurance Company commenced this action in September of 1986, seeking a determination that a directors' and officers' liability policy it issued to the officers of Briggs Transportation Company did not cover claims brought by the State of Minnesota,

---

* Wm. J. Nierengarten, retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

the State of Nebraska, and the Internal Revenue Service (IRS) to recover unpaid taxes. The trial court granted summary judgment in part, finding the policy did not cover the claims brought by the IRS. Subsequently, the trial court granted summary judgment as to the claims brought by Minnesota and Nebraska. The officers have appealed.

## FACTS

This case is an outgrowth of the bankruptcy of Briggs Transportation Company. Lowell Brutlag and Clifford Yentes were directors and officers of Briggs. Michael Wardwell was the chief executive officer of Briggs.

On April 1, 1982, Yentes was promoted from vice president of finance to executive vice president. On that same date, Wardwell assumed the title of chairman of the board and chief executive officer, and Brutlag was named president and chief operating officer.

Briggs was a large regional trucking company with approximately 2,000 employees. During the period from 1979 to 1982, the trucking industry as a whole was in a depressed condition. This condition was due to a number of factors, including rising fuel costs, high interest rates, and deregulation of the industry. Briggs found itself in dire financial condition by 1982.

Part of Wardwell's management style included reviewing each check before it was paid. Wardwell and Andrew Hopkins, the treasurer, would sit down and review Briggs' obligations on a daily basis. Wardwell would then decide which obligations were to be paid and which were to be held. During the latter part of 1981 and the first half of 1982, Wardwell fell ill several times. Even when he was in the hospital, Wardwell continued to decide which creditors would be paid.

As Briggs' financial condition deteriorated during 1981 and 1982, more of its corporate obligations were deferred until cash became available. Briggs' federal withholding taxes, which accrued at the rate of $175,000 per week, were among the deferred obligations. The withholding tax payments were paid late during the latter quarters of 1981 and the first and second quarters of 1982. Yentes and Brutlag claim they did not know the taxes had not been paid.

After Wardwell's death, Hopkins handled disbursements himself, following Wardwell's pattern of paying the oldest obligations first. Payments made by Briggs during the third quarter of 1982 were applied to the prior delinquency. As a result, a deficiency began to accrue for the third quarter of 1982.

Upon learning of the substantial tax delinquency (approximately $2,130,000 at the time of Wardwell's death), Brutlag consulted counsel, called a meeting of the board of directors, and set up a meeting with the IRS. Counsel advised Brutlag and other officers of Briggs that Briggs' failure to pay the current withholding taxes due could subject the officers to personal liability for the taxes. Upon learning this, the officers directed that the corporation designate current payments to apply to the current tax obligations. In addition, Briggs began to remit payments of $10,000 per week to the IRS in an attempt to reduce the second quarter delinquency.

In January of 1983, Briggs was forced into Chapter 11 bankruptcy. The bankruptcy was converted to a Chapter 7 bankruptcy in 1984.

The IRS is seeking to recover the withholding taxes due but unpaid for the second and third quarters of 1982 from Brutlag and Yentes personally pursuant to section 6672 of the Internal Revenue Code, which provides:

(a) **General rule.**—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

26 U.S.C.A. § 6672 (1989). The State of Nebraska has commenced a similar action to recover state withholding taxes. The State of Minnesota has commenced an action to recover state fuel taxes, state sales and use taxes and state withholding taxes. The total amount claimed by the IRS is approximately $1,750,000.

Yentes and Brutlag turned to St. Paul Fire and Marine Insurance Company, which had issued a directors' and officers' liability policy to Briggs. St. Paul Fire commenced the present declaratory judgment action, seeking a determination that the policy does not provide coverage for the claims brought by the IRS. The trial court ruled in favor of St. Paul Fire, finding that there was no coverage under the plain language of the policy and that public policy prohibited insurance recovery for tax liability. The trial court denied St. Paul Fire's motion for summary judgment regarding similar tax assessments made by the States of Minnesota and Nebraska. St. Paul Fire's subsequent motion for summary judgment as to the Minnesota and Nebraska assessments was granted, and Yentes, Brutlag, and Sheridan Buckley, the trustee in bankruptcy for the estate of Briggs Transportation Company, have appealed.

### ISSUES

1. Did the trial court err in finding no coverage under the language of the St. Paul Fire policy?

2. Are Yentes and Brutlag entitled to coverage under the doctrine of reasonable expectations?

3. Did the trial court err in finding St. Paul Fire has no obligation to defend Brutlag and Yentes?

### ANALYSIS

Summary judgment is appropriate when there is no genuine issue as to any material fact and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On review of a summary judgment, this court must determine whether factual issues exist and whether the trial court correctly applied the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The essential facts of this case are undisputed. At issue is interpretation of an insurance policy, a question of law which this court reviews de novo on appeal. *See Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978).

The St. Paul Fire policy provides:

### CONDITIONS

1. LOSS

The term "Loss" shall mean:

\* \* \* \* \* \*

B. Under Insuring Agreement IB, *any amount the Insured is obligated to pay as respects his legal liability, whether actual or asserted, for any negligent act, any error, any omission or any breach of duty * * *.* C. Provided always that under IA and IB above *such subject of loss shall not include fines or penalties imposed by law or other matters which may be deemed uninsurable* under the law pursuant to which this Policy may be construed.

(Emphasis added.) St. Paul Fire, relying on the policy's definition of the term "loss," contends the tax assessments made by the IRS against Brutlag and Yentes constitute penalties and are not covered under the policy. We disagree.

Most courts that have addressed this issue have determined that section 6672 liability is not a penalty but a method of ensuring that a tax withheld from employees' paychecks is paid to the federal government. The Sixth Circuit has stated:

Congress enacted section 6672 to protect the government against losses by providing it with another source from which to collect the withheld taxes. "Despite its denomination as a 'penalty' assessment, the statutory liability imposed by section 6672 is essentially civil in nature."

*Gephart v. United States*, 818 F.2d 469, 473 (6th Cir.1987) (quoting *Monday v. United States*, 421 F.2d 1210, 1216 (7th

Cir), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970)). Another federal court has stated:

> an action instituted under § 6672 is not designed to impose criminal sanctions, but to ensure payment to the United States of a tax already collected or deducted by an employer whose employees have already received credit for the withheld taxes on their individual returns.

*Geiger v. United States*, 583 F.Supp. 1166, 1169 (D.Ariz.1984). As the court noted in *Sherman v. United States*, 490 F.Supp. 747 (E.D.Mich.1980):

> Although denominated a penalty, the liability imposed by Section 6672 is not penal, but is merely a means of ensuring that the taxes will be paid by shifting the responsibility for payment from the corporation to the persons responsible for the nonpayment. * * *.

> It is clear that Congress intended Section 6672 to be applied and construed as a stringent measure for the protection of the withheld taxes at their source.

*Id.* at 752–53 (citations omitted); *see also United States v. Indus. Crane & Mfg. Co.*, 492 F.2d 772, 774 (5th Cir.1974) ("the penalty is civil in nature and imposed to prevent loss of government revenue, and not to inflict punishment"); *United States v. Pridgen*, 403 F.Supp. 1109, 1110 (S.D.N.Y. 1975).

■ St. Paul Fire also contends tax liability is uninsurable as a matter of law. We agree. Generally, an insurer will only assume those risks that are beyond the effective control of its insured. In discussing "elementary insurance principles," the Minnesota Supreme Court has stated:

> In exchange for the payment of a premium, an insurer assumes certain risks that otherwise would be the obligation of the insured. In order to have predictable and affordable insurance rates, the insurers' assumptions of risk are usually limited to those beyond the "effective control" of the insured.

*Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 233–34 (Minn.1986). Requiring St. Paul Fire to assume the risk of the tax liabilities asserted in the present case would destroy St. Paul Fire's ability to set predictable and affordable premiums. *See id.* It is a central concept of insurance that a single insured will not be allowed, through reckless or intentional acts, to control the risks covered by the policy. *Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 78, 240 N.W.2d 310, 313 (1976), *overruled on other grounds, Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 391 (Minn.1979).

Furthermore, insurance coverage for nonpayment of taxes would be contrary to public policy. The officers of Briggs were under a legal obligation to ensure that Briggs' taxes were paid. This obligation, which state and federal law imposes on the officers personally, cannot be shifted to some third party. To permit this shift would wreak havoc on collection efforts. *See Benoit v. Commissioner of Revenue*, 453 N.W.2d 336, 343 (Minn.1990). In addition, it would be contrary to public policy to require insurers to pay for losses occasioned by willful acts.

■ Brutlag and Yentes contend they reasonably expected the St. Paul Fire policy to cover their tax liability. Whether an expectation of coverage is reasonable is a question of law, which this court reviews de novo on appeal. *Schmidt v. St. Paul Fire & Marine Ins. Co.*, 376 N.W.2d 237, 239 (Minn.App.1985).

Yentes and Brutlag have pointed to nothing in the record which would indicate a reasonable expectation of coverage. Brutlag notes that the articles of incorporation of Briggs provided for indemnification and costs of defense of directors and officers. However, there is no reason to believe that the articles of incorporation of the insured's employer can be taken into account in considering the reasonable expectations of the insured. *See generally* Keeton, *Insurance Law Rights at Variance with Policy Provisions*, 83 Harv.L.Rev. 961 (1970).

■ The duty to defend under an insurance policy is broader than the duty to indemnify. *Brown v. State Auto. & Casualty Underwriters*, 293 N.W.2d 822, 825 (Minn.1980). As a general rule, "[i]f any

part of the cause of action against its insured is arguably within the scope of the policy's coverage, the insurer must provide a defense." *Johnson v. Aid Ins. Co.*, 287 N.W.2d 663, 665 (Minn.1980). No part of the cause of action in the present case is within the scope of coverage, and there is no duty to defend.

## DECISION

Appellants' personal liability for Briggs' tax obligations is uninsurable as a matter of law. The doctrine of reasonable expectations is inapplicable. St. Paul Fire has no duty to defend.

Affirmed.