## ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff,

v.

## NATIONAL REAL ESTATE CLEARINGHOUSE, INC., and Illinois corporation, Defendant,

and

## George Dress, a citizen of the state of Washington, Defendant.

No. 3–95–93.

United States District Court,
D. Minnesota,
Third Division.

March 14, 1997.

---

Jeffrey J. Bouslog and Andrew J. Voss, St. Paul, MN, for Plaintiff St. Paul Fire and Marine Insurance Company.

Chester D. Swenson, Albert Lea, MN, for Defendant George Dress.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

This is a declaratory judgment action in which Plaintiff St. Paul Fire and Marine Insurance Company ("St.Paul") seeks a declaration that the claim asserted by Defendant George Dress ("Dress") against its insured, National Real Estate Clearinghouse ("National"), is not covered under the applicable insurance policy. Currently before the Court is the motion of St. Paul for summary judgment.

*Facts*

The underlying claim was brought by Dress against National after his bid to acquire the Northbridge Mall in Albert Lea, Minnesota was declined by the Resolution Trust Corporation ("RTC"). National was under contract with the RTC to provide sealed marketing assistance. The claims asserted in the Complaint were broad, alleging wrongful conduct on behalf of National.

Right before trial, however, Dress identified his claim against National as one of intentional interference with prospective economic advantage. On the eve of trial, the parties reached a Miller–Shugart Settlement. Judgment was entered in favor of Dress for $450,-000.

After Dress filed his Complaint against National, National tendered the claim to St. Paul and requested a defense under its policy No. PF00602093 ("Policy"). The Policy provides National with "Appraiser and Auctioneer Professional Liability Protection" which was intended to provide coverage for professional liability that may result from activities as an appraiser or auctioneer. *See* Introductory Paragraph to Policy, at p. 1. The Policy provides:

> We'll pay amounts you and other protected persons are legally required to pay to compensate others for loss that results from an error, omission or negligent act committed in the conduct of your business indicated in the Coverage Summary [Auctioneer].
>
> All such errors, omissions or negligent acts will be referred to as "wrongful acts" in this agreement.

Finally, as to the defense of claims, the Policy provides:

> We'll defend any suit brought against you or any other protected person for covered claims even if a suit is groundless or fraudulent. We'll also pay all costs of defending the suit.

Initially, St. Paul assumed the defense of National against Dress' lawsuit, but reserved the right to deny coverage if it should determine that there was no coverage for Dress' claims under the Policy. After learning that Dress was asserting only an intentional interference with prospective economic advantage claim, St. Paul notified National by letter dated January 13, 1995 that it was not obligated to defend or indemnify National against such claim. St. Paul agreed to continue to defend National however, because of the impending trial date, but expressly denied any indemnity with respect to the remaining claim.

St. Paul now moves the Court for summary judgment, asserting a claim for inten-

tional interference with prospective economic advantage is not covered under the Policy.

*Standard for Summary Judgment*

■ Summary judgment is appropriate if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett.* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup. Inc. v. O'Rourke Storage & Transfer Co.* 980 F.2d 1217, 1219–20 (8th Cir.1992). As the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex.* 477 U.S. at 327, 106 S.Ct. at 2555. The interpretation of insurance contract language is a question of law, based on the specific facts before the Court. *Meister v. Western National Mutual Insurance Company* 479 N.W.2d 372, 376 (Minn.1992). For purposes of St. Paul's motion for summary judgment, there are no factual disputes. Thus, this case is ripe for summary judgment.

■ Dress does not dispute that the claim he would have tried before a jury was one for intentional interference with prospective economic advantage. Thus, the issue before this Court is whether such claim is covered under the Policy, looking to the Policy language.

■ "Generally, an insurance contract must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." *Independent School District No. 697 v. St. Paul Fire and Marine Insurance Company,* 515 N.W.2d 576, 579 (Minn.1994)(*ISD 697*). The Court is not to read a policy to provide for coverage where none was purchased. *Richards v. Fireman's Fund Insurance Company* 417 N.W.2d 663, 667 (Minn.Ct.App.1988) *rev. denied* (Mar. 23, 1988).

St. Paul first argues that the Policy at issue is a "professional liability" policy that covers only errors or omissions for professional liability claims that result from National's business as an auctioneer. To establish coverage, Dress must show that his claim of intentional misconduct results from the application of an auctioneer's professional skill or judgment. In other words, the conduct complained of is peculiar to the insured profession. St. Paul's characterization of the coverage provided by professional liability policies is consistent with applicable case law.

Professional liability policies are commonly referred to as "errors and omissions" policies. *Crum and Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill.2d 384, 189 Ill.Dec. 756, 761, 620 N.E.2d 1073, 1078 (1993). "[I]t is designed to insure members of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes and errors inherent in the practice of the profession." *Id. (citing* 7A J. Appleman & J. Appleman, *Insurance Law & Practice,* § 4504.01, at 310 (rev.1979)). In *Crum,* the court determined that intentional torts committed by the insured were not covered under the professional liability policy as they did not arise because of the insured's performance of real estate services. *Id.,* at 762, 620 N.E.2d at 1079.

Essentially, Dependable's complaint alleges that the insureds committed intentional business torts and engaged in unfair competitive practices. The risk of conducting one's business in an unfair and tortious manner is certainly not one inherent in the practice of real estate. Although the complaint contains allegations which refer to real estate matters such as listings and commissions, these are allegations which go to the injury or damage done to Dependable and which resulted from the insured's allegedly tortious conduct. These allegations do not form the genesis from which the claims made by Dependable first arose. Dependable's claims are not made against the insureds because the insureds somehow incorrectly performed real estate services such as the listing of properties. Dependable's claims are made against the insureds and have arisen because of the insureds allegedly tortious conduct and unfair business practices which are ancillary to the performance of real estate services. *Id.*

In *St. Paul Fire and Marine Insurance Company v. Mori,* 486 N.W.2d 803 (Minn.Ct. App.1992) *rev. denied* (Aug. 4, 1992), the

court was asked to determine whether a malpractice claim asserted against a gynecologist, involving sexual abuse, was covered by a professional liability policy. The court noted that a professional act "is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill ..." *Mori,* 486 N.W.2d at 807–808. To fall under the professional liability coverage, the plaintiff in *Mori* had to show her damages were caused by improper or incorrect medical treatment or the withholding of medical treatment. *Id.* A doctor who takes sexual liberties while treating problems is not the type of claim usually covered by a professional liability policy. *Id. (citing, Smith v. St. Paul Fire and Marine Ins. Co.* 353 N.W.2d 130, 132 (Minn.1984)).

In *Employers Reinsurance Corp. v. Caswell,* 490 N.W.2d 145 (Minn.Ct.App.1992) *rev. denied* (Nov. 17, 1992), the court held that fraudulent misappropriation of funds by a corporate officer was not covered under a professional liability policy. The court reasoned that the incurrence of corporate debt or the fraudulent misappropriation of funds, did not arise out of the conduct of the insurance business specifically. *Id.,* at 149. Thus, the claim was not covered by the professional liability policy. *Id.*

St. Paul argues that Dress's claim did not arise out of the negligence, omissions, mistakes and errors inherent in the practice of the auctioneer. Rather, Dress' claims resulted from the allegedly tortious conduct of National and one of its executives, which was ancillary to the performance of auctioneer services.

In his opposition brief, Dress does not respond to St. Paul's argument that his claim did not arise out of the performance of auctioneer services. Rather, relying on the recent opinion of the Minnesota Supreme Court in *ISD 697, supra,* Dress asserts that his claim of intentional interference with prospective economic advantage is covered under the Policy, as the Policy should be interpreted to cover intentional acts.

In *ISD 697,* the court was asked to determine whether the policy at issue covered age discrimination claims. The policy at issue covered:

This agreement protects against losses and expenses that occur when claims or suits are brought against you or any protected person for a wrongful act based on

An error or omission

Negligence

Breach of duty. Or

Misstatement or misleading statement.

*Id.,* at 577. In determining the extent of coverage provided by the above language, the court first determined that 'wrongful act' and 'breach of duty' generally encompass intentional as well as negligent misconduct. *Id.,* at 579. The Policy language at issue in this case is different, however, and thus distinguishes it from *ISD 697.* The Policy provides coverage for "errors, omissions and negligent acts committed in the conduct of your business." The policy defines wrongful act as "errors, omissions or negligent acts." No coverage is provided for breach of duty. Because of these differences in the policy language, Dress' reliance on *ISD 697* for his position that the Policy covers intentional acts is misplaced.

In fact, the court in *ISD 697* distinguished cases which interpreted "errors and omissions" policies, as such policies contain much narrower language. The court specifically cites to *Richards v. Fireman's Fund Ins. Co.* 417 N.W.2d 663 (Minn.Ct.App.1988). In *Richards,* the policy at issue provided coverage for 'breaches of duty' arising from 'any negligent act, error or omission.' The court in *ISD 697,* distinguished such policy language as each covered act was modified with the concept of negligence, and because the *Richards* policy did not provide coverage for wrongful acts generally. *Id.,* at 579.

Although the negligent acts and errors and omissions are transposed in the Policy at issue in this case, St. Paul argues that the Policy should be limited to negligent acts as it defines "wrongful act" as "errors, omissions and negligent acts." St. Paul argues "[i]t would be self-defeating to limit the definition of 'wrongful act' to negligent acts, but at the same time cover intentional errors or omissions." *Golf Course Superintendents Ass'n v. Underwriters at Lloyd's,* 761 F.Supp. 1485, 1490 (D.Kan.1991).

The Court finds that the language of the Policy is clear. Coverage extends only to errors, omissions or negligent acts which are inherent in the practice of auctioneering. Furthermore, the Policy does not cover intentional acts. Thus, the claim alleged against National for intentional interference with prospective economic advantage is not covered by the Policy, as such claim is based on an intentional act that did not arise from the rendering of auctioneering services.

Dress also argues that, even if the Court finds that intentional acts are not covered under the Policy, St. Paul is nonetheless estopped from denying coverage. This argument has no merit. "[A] stranger to an insurance contract cannot estop the insurer from denying coverage to its insured." *Royal Insurance Company v. Western Casualty Insurance Company,* 444 N.W.2d 846, 848 (Minn.Ct.App.1989)(*citing, Quam v. Wulfekuhle,* 390 N.W.2d 472 (Minn.Ct.App.1986) *pet. for rev. denied,* (Minn.1986)(judgment creditor precluded from asserting estoppel claims)).

IT IS HEREBY ORDERED that Plaintiff St. Paul Fire and Marine Insurance Company's motion for summary judgment is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.