**BENILDE–ST. MARGARET'S HIGH SCHOOL, Respondent,**

v.

**ST. PAUL MERCURY INSURANCE COMPANY, Appellant.**

**No. C3–97–1779.**

Court of Appeals of Minnesota.

March 17, 1998.

Review Denied May 28, 1998.

Francis J. Rondoni, Rondoni, MacMillan & Schneider, Ltd., Minneapolis, for respondent.

Jeffrey J. Bouslog, Andrew J. Voss, Oppenheimer, Wolff & Donnelly, St. Paul, for appellant.

## OPINION

MARTIN J. MANSUR,* Judge.

Appellant insurer challenges the district court's grant of summary judgment. The district court determined that the St. Paul Preferred Protection Plan (the policy) provides coverage for loss sustained by respondent of monies that represented employees' contributions for social security benefits that were paid by respondent to its payroll vendor

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

and were misappropriated by the vendor who went bankrupt. We affirm.

## FACTS

Respondent Benilde–St. Margaret's High School (Benilde) operates a parochial junior and senior high school. Benilde purchased a comprehensive insurance policy from appellant St. Paul Mercury Insurance Company (St.Paul). The policy included employee benefits program administration liability protection, which the policy clarified:

> We'll pay amounts you and other protected persons are legally required to pay to compensate others for loss that results from an error, omission or negligent act committed in the administration of your employee benefits for your present or former employees. All such errors, omissions or negligent acts will be referred to as "wrongful acts" in this agreement.

Included in the list of what was included in the term "employee benefits" was "[s]ocial security system benefit."

In its attempt to cut costs, Benilde changed payroll vendors; beginning in January 1995, Corporate Financial Services, Inc. (CFS) provided payroll services for Benilde. CFS made electronic transfers from Benilde's accounts to pay employees and to collect payroll deductions of Benilde's employees. CFS was supposed to then forward the deductions—such as withheld taxes and social security monies—to the Internal Revenue Service (IRS) or other appropriate agencies. In September 1995, CFS filed for bankruptcy. Between January and September 1995, CFS had collected payroll monies from Benilde, but had misappropriated the funds collected as payroll deductions, including $183,927.27 in employee social security monies. Because Benilde was held to be responsible for the loss by the IRS, Benilde entered into a repayment agreement with the IRS to pay $4,000 per month until the debt is paid in full.

Benilde sought recovery from St. Paul for the social security monies. St. Paul denied coverage and Benilde brought this action for recovery of the monies. The district court granted summary judgment in favor of Benilde. This appeal followed.

## ISSUES

I. Did the district court err by finding that Benilde's loss was covered by its insurance policy?

II. Did the policy's tax exclusion preclude coverage?

III. Is Benilde's recovery barred by Minnesota law prohibiting insurance coverage for tax liability?

IV. Did the district court err by referring to a "reasonable expectations" doctrine?

## ANALYSIS

In reviewing a summary judgment, this court asks two questions: "(1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The interpretation of an insurance contract presents a question of law. *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992).

### I.

St. Paul asserts that Benilde's payment of lost social security monies to the IRS is not covered by its insurance policy.

a. First, St. Paul argues that the amount owed to the IRS is required by federal law. Therefore, St. Paul contends that it does not stem from the administration of employee benefits, and is not covered by the policy. While it is true that the monies are required by federal law, that does not mean that they do not also arise from the administration of employee benefits. If the administration of benefits had been properly executed to meet the requirements of federal law, there would be no loss.

■ b. St. Paul contends that Benilde's claim is not covered because the policy states that it covers amounts Benilde is required "to pay to *compensate* others." (Emphasis added.) It argues that the IRS is not seeking compensation, which St. Paul notes is defined as "[t]hat which is necessary to restore an injured party to his former posi-

tion," and "[a]n act which a court orders to be done, or money which a court or other tribunal orders to be paid, by a person whose acts or omissions have caused loss or injury to another * * * ." *Black's Law Dictionary* 283 (6th ed.1990). St. Paul argues that the IRS is not seeking compensation because it is merely collecting revenue. This semantic argument is not valid. The monies that were misappropriated by CFS were no longer Benilde's, which had already forwarded them, but belonged to the IRS. Therefore, the IRS suffered a loss by the absence of its social security monies, for which it sought compensation.

■ c. St. Paul argues that Benilde's liability does not result from an "error, omission or negligent act," as required by the policy. However, it was a negligent act for Benilde to have failed to properly investigate CFS before engaging CFS for payroll services. The record includes an affidavit by Terry Rust, a certified public accountant with extensive experience with nonprofit corporations, particularly private schools. Rust's affidavit states that charitable organizations should undertake, at minimum, the following investigations into an outside payroll vendor: (1) a thorough review of the company's financial stability; (2) a report from an outside auditor regarding the internal controls in place at the company relative to their handling of payroll funds; and (3) a review of those internal controls. St. Paul does not dispute the fact that CFS was insolvent at the time it contracted with Benilde to provide payroll services.

■ d. St. Paul argues that Benilde does not *directly* administer employee benefits, and therefore it is not subject to coverage. This argument introduces specifications not present in the policy. In a case involving the same type of employee benefits policy, this court determined that because the insurer (also St. Paul) failed to define "administration," the court must use the plain meaning of the term, which includes "the '[d]irection or oversight of any office, service, or employment.'" *CPT Corp. v. St. Paul Fire & Marine Ins. Co.,* 515 N.W.2d 747, 750 (Minn. App.1994) (quoting *Black's Law Dictionary* 44 (6th ed.1990)), *review denied* (Minn. July

27, 1994). In *CPT Corp.,* this court found that the insured's actions amounted to the administration of employee benefits, and therefore gave rise to the insurer's duty to defend. *Id.* Because Benilde directed CFS to manage its payroll, Benilde's actions also amounted to the administration of employee benefits.

■ e. St. Paul asserts that the district court erred by determining that CFS's actions constituted a wrongful act because intentional misconduct cannot be included in coverage for "errors, omissions or negligent acts." This argument is misplaced for three reasons. First, CFS is neither an employee nor an insured under the policy; therefore, its conduct is not subject to coverage. Second, the cases cited by St. Paul—*St. Paul Fire & Marine Ins. Co. v. National Real Estate Clearinghouse, Inc.,* 957 F.Supp. 187 (D.Minn.1997), *aff'd,* —— F.3d —— (8th Cir. 1998) (unpublished table decision) and *Richards v. Fireman's Fund Ins. Co.,* 417 N.W.2d 663 (Minn.App.1988), *review denied* (Minn. Mar. 23, 1988)—can be distinguished because the coverage involved in both cases arose from professional liability policies, which protect the insured from errors and omissions in the conduct peculiar to and inherent in the practice of a profession. The policy in the instant case was not a professional liability policy, but a policy covering the administration of employee benefits. Third, the insured act is Benilde's failure to investigate CFS's financial security. Therefore, a categorization of CFS's conduct is not relevant to our determination of coverage.

■ f. St. Paul asserts in its oral argument that the loss for which Benilde is seeking coverage is a first-party loss, as the IRS has not suffered a loss. St. Paul contends that because the policy offers third-party coverage, that loss is not covered by the policy.

We agree that the policy is a third-party policy, but we reject St. Paul's argument that the IRS has not suffered a loss. As discussed in subsection (b), CFS's misappropriation of funds resulted in the IRS's loss of funds that it was due. Simply because the IRS has extraordinary powers of collection of

monies it is owed, and because it here transferred that loss to Benilde, does not make Benilde's claim a first-party claim.

St. Paul suggests that Benilde would require a fidelity bond to cover its loss. We disagree, not only for the reasoning stated above, but because of the inappropriateness of fidelity bond coverage in this situation. A fidelity bond protects an organization from a loss due to the dishonest or fraudulent acts of its employees. CFS was not a Benilde employee, but rather a contracted vendor, and no Benilde employee committed a dishonest or fraudulent act connected with this claim.

## II.

■ St. Paul argues that Benilde's recovery of the social security monies is barred by a policy exclusion:

**Fines, taxes or penalties.** We won't cover fines, taxes or penalties imposed by law or other matters which may be uninsurable under law.

This argument is dependent on the classification of the social security monies as taxes. St. Paul argues that the monies, which are collected and sent to the IRS, are undeniably taxes. However, the policy's tax exclusion does not apply here because the policy itself listed "[s]ocial security system benefit" under its list of definitions of "employee benefits." St. Paul argues that the listing refers to social security *benefits* (i.e., money received from the federal government), not social security *taxes* (i.e., money collected for the federal government); we find that this argument strains credibility. An employer has no dealings with what St. Paul defines as social security benefits, while all employers are required by law to be responsible for what St. Paul defines as social security taxes; there would be no reason for an employer to seek coverage for the administration of social security *benefits*. While it is true that the social security monies are frequently referred to as taxes, the plain language of the policy makes clear that it covers social security monies, and, therefore, the tax exclusion does not apply to employees' social security contributions.

## III.

St. Paul alternatively argues that Minnesota law prohibits insurance coverage for tax liability, citing *St. Paul Fire & Marine Ins. Co. v. Briggs,* 464 N.W.2d 535 (Minn.App. 1990), *review denied* (Minn. Mar. 15, 1991). *Briggs,* however, does not apply to the facts of this case. First, *Briggs* involved a directors' and officers' liability policy, not an employee benefit policy. Second, *Briggs* involved withheld taxes that were not specifically covered by its policy, while Benilde seeks coverage only of social security monies, which were specifically included in its policy. Third, the situation in *Briggs* was that of a company attempting to dodge its tax liability. This is not the case here: the instant case represents a very unusual fact situation in which the insured made good faith efforts to pay its social security monies, and in fact did electronically pay those monies to its payroll service, which thereafter misappropriated the monies. This court wrote in *Briggs:* "Generally, an insurer will only assume those risks that are beyond the effective control of its insured," and that an insured is not permitted to control the policy's risks through reckless or intentional acts. *Id.* at 539. Here, the bankruptcy of CFS was beyond the control of Benilde, and while it may have been imprudent for Benilde to have foregone a more thorough review of CFS, it was not an intentional or reckless act. Finally, *Briggs* relied heavily on a public policy argument, stating that Briggs's officers' obligation to pay its taxes cannot be shifted onto a third party. Here, Benilde is not attempting to shift its burden; rather, it is trying to recover money that it is essentially obligated to pay twice because of CFS's actions.

## IV.

St. Paul contends that the district court erred by referring to the reasonable expectations doctrine in a footnote. To clarify, the district court determined that the policy was not ambiguous, and then created a footnote which stated:

If an ambiguity did exist, based upon the written provisions of the policy, the reasonable expectation doctrine would support Plaintiff's claim for coverage.

St. Paul's objection to this innocuous footnote is misplaced, as it represents a fairly straightforward statement of the law. *See Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn.1997) (stating ambiguous language in an insurance contract must be "resolved against the insurer and in accordance with the reasonable expectations of the insured").

## DECISION

The policy provides coverage for losses the respondent is legally obligated to pay by reason of its error, mistake, or negligent act in the administration of the employee social security benefits program. The employee contributions for social security are not taxes of the employer and, therefore, are not taxes for insurance purposes. The district court did not err in granting summary judgment to Benilde.

Affirmed.

SHORT, Judge (dissenting).

I respectfully dissent. The trial court erred in concluding Benilde's tax liability is a "liability claim" resulting from the administration of Benilde's employee benefits. Despite creative characterizations by counsel, Benilde's claim is merely an effort to recover embezzled payroll taxes, and as such, falls outside the employee benefits program administration policy's insuring agreement. First, Benilde's loss is not an indemnity obligation owed to a third party as required by the policy, but is a claim against CFS. Thus, the funds do not constitute an amount for which Benilde is "legally required to compensate others for loss." *See Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn.1993) (holding unambiguous language in insurance policy must be given plain and ordinary meaning). Second, CFS's misappropriation of money cannot be described as "an error, omission, or negligent act." *See St. Paul Fire & Marine Ins. Co. v. National Real Estate Clearinghouse, Inc.*, 957 F.Supp. 187, 191 (D.Minn.1997) (holding no coverage for intentional misconduct under policy insuring against "error, omission or negligent act"), *aff'd,* —— F.3d —— (8th Cir. Feb. 20, 1998) (unpublished table decision). And third, "taxes imposed by law" are excluded from insurance coverage. *See St. Paul Fire & Marine Ins. Co. v. Briggs*, 464 N.W.2d 535, 539 (Minn.App.1990) (holding insured may not obtain insurance coverage for federal tax liability), *review denied* (Minn. Mar. 15, 1991). Under these circumstances, the policy provides no coverage and I would reverse the trial court's grant of summary judgment in favor of Benilde.